Onstott v. Murray.

Reversed.

---

## Onstott *et al.* v. Murray *et al.*

1. **Highway:** DEDICATION, USE AND ACQUIESCENCE. Dedication of a highway to the public may be established without evidence of an express grant or other affirmative act on the part of the owner. Long use by the public and acquiescence therein by the owner, are of themselves evidence of a dedication.

2. —— STATUTE OF LIMITATIONS. If the public, with the knowledge of the owner of land, has claimed and continuously exercised the right of using the same for a public highway, for a period equal to that fixed by the

statute for the limitation of real actions, a complete right to the high-way thereby becomes established against the owner, unless it appears that such use was by favor, leave or mistake.

3. —— CASE VARIED BY CIRCUMSTANCES. If that claimed as a highway was a mere neighborhood or timber road, much stronger evidence of a dedi-cation or prescriptive right would be required, than if it were a thor-oughfare, or a part of an acknowledged highway.

*Appeal from Lee District Court.*

TUESDAY, JULY 2.

HIGHWAYS: HOW ESTABLISHED: DEDICATION: PRESCRIP-TION. — The question in this case is whether a certain alleged public highway has a legal existence.

The action was trespass, brought before a justice of the peace. The alleged trespass consists in entering upon lands in the possession of the plaintiffs and throwing down certain fences. Defendant Murray justifies the trespass by setting up that he was the road supervisor of the district in which the land described in the petition is situate; that the fences, alleged to have been removed, obstructed a public highway across the said land. The other defendants acted, as they allege, by virtue of an order from Murray as road supervisor.

Before the justice, judgment passed for plaintiffs, and defendants appealed to the District Court, where, after a trial, upon the verdict of a jury, judgment was ren-dered against the defendants, who prosecute an appeal to this court.

The evidence is not all brought up. It is simply cer-tified that it tended to prove certain facts. The errors assigned relate to certain instructions of the court, noticed in the opinion. That the legal questions arising on the appeal may the better be understood, it is neces-sary briefly to refer to facts which it is certified the evidence tended to prove.

This action was commenced in December, 1862. On the trial it was shown by the plaintiffs, that the eighty acres of land through which the alleged highway runs, was owned by one John Graham of Pennsylvania, and had been owned by him for over twenty years; that the plaintiffs leased the same of him in April, 1862; that the plaintiffs, after the lease, and before this suit was brought, inclosed this land with a fence; and that defendants tore down said fence, on the east side of said land, without plaintiffs' consent. The said eighty acres of land had never before been inclosed, and was part prairie and part timber.

Defendants introduced evidence tending to prove "that from 1837 to the time plaintiffs fenced said land, in 1862, there had been a plain, open public highway over said land, much traveled on and over by people and teams of several townships, to get timber and fuel, to go to mill and to church, and for all other purposes that highways are used for; that the settlements were populous, and the people had used said road as a highway; that the people had at various times given and done volunteer work on said road on said land, and that during different years different parties had, under authority of a public road supervisor of the township, worked out their road and *ad valorem* taxes on said road, on said land, and in one case by building a bridge across a wet place on the same; that the travel and use by the public of said road was continuous from about A. D. 1837, till it was fenced by plaintiffs in 1862;" that Graham, the owner, had visited the county of Lee once every year, and sometimes twice, he having property in that county. It was testified that about 1850, he was informed of this road on the land, and that he replied that he considered that the road added $100 to the value of the land. Graham, in his testimony, denied that he had ever been so informed, or that he made any such reply.

Defendants introduced evidence which tended to show that the road in question "was two and a half miles long, and passed from a public highway known as the prairie road, between West Point and Fort Madison, to a public road known as the timber road, between said towns of West Point and Fort Madison; that, after it reached said timber road, it connected with a road running diagonally south of said timber road to a settlement of persons in a section of timber country near by, and from which timber, the persons north of and along said prairie road, chiefly got their rails, fuel and timber, traveling said road over said land of Graham;" that Murray was supervisor, and defendants acted under his direction in removing the fence where it crossed the road on the east side of said land; that the eighty-acre tract west of Graham's had been inclosed and cultivated over twenty years prior to the building of said fences by the plaintiffs, except a portion of it over which said road also passed; that the eighty acres east of Graham's was also fenced about 1844, and has ever since been and is now inclosed, except that part of it over which said road passes; the said road passes over Graham's eighty from north-east to south-west, and has passed over it since 1837; that, in 1848, the township trustees ordered a road to be surveyed across Graham's eighty and other lands; that the surveyor surveyed the same line which had been traveled over as above stated, but defendants proved that this road was not legally established, because of material defects in the procedings, and because there was no proof that the trustees had procured the assent of the owner of the land.

Plaintiffs introduced evidence tending to prove that where the fence was torn down, was not in the usual line of travel, and that Graham had no knowledge of said road passing over his land. Graham swears in his depo-

sition that he had no knowledge of a road being "located or established on said land."

The errors assigned relate to certain instructions of the court to the jury.

*John Van Valkenburg* and *Grant & Smith* for the appellants.

I. User of a highway by the public under a claim of right for a period equal to the period of limitation for the commencement of real actions will bar the owner of the soil. *Keyes & Crawford* v. *Tait*, 19 Iowa, 123; 3 Kent's Com., 575, 576; and authorities cited in point third of this brief.

II. The highway in controversy is a road by dedication. As to what constitutes a dedication, see Angell on Highways, §§ 123, 135, 142 and 143; *Goulds* v. *Glass*, 19 Barb., 195; 3 Kent's Com., 451; *Smith* v. *The State*, 3 Zabr., 130; *Denning* v. *Roome*, 6 Wend., 65; *Post* v. *Pearsall*, 22 Id., 450; *The State* v. *Marble*, 4 Strob., 60; *State* v. *Cardwell*, Bus. (N. C.), 245; 2 Peters, 566; 6 Hill (N. Y.), 406. A permission to the public to use a street, without bar or impediment, is evidence from which a dedication to the public may be inferred. 1 Bouv. Law Dict., p. 386; 2 Bouv. Inst., 4, 1631; 11 East., 376; 12 Wheat., 585; 10 Pet., 662; 2 Watts, 23; 1 Whart., 469; 2 Verm., 279; 6 Id., 365; 7 Ham., part 2, 135; 12 Wend., 172; 11 Ala., 68, 81; 1 Spencer, 86; 8 Miss., 448; 5 Watts & S., 141; Wright, 150; 6 Hill, 407; 24 Pick., 71; 6 Pet., 431, 498, and authorities therein cited; 2 Hilliard on Real Property, § 22.

III. The road in controversy is a highway established by prescription. For a correct definition of the term prescription, see 2 Bouv. Law Dict., p. 471. As to what length and character of use will constitute a pre-

scriptive right, see *Worrall* v. *Rhodes*, 2 Wharton, 417; 1 Saund., 323, *a;* 10 East., 476; 2 Br. & Bing., 403; Cowp., 215; 2 Wils., 53; 2 Chit. Bl., 35, N. 24; Amer. Jurist, No. 37, p. 96; 17 Vin. Ab., 256; 7 Com. Dig., 93; Rutherf. Inst., 63; Co. Litt., 113; 2 Conn., 584; 9 Id., 162; Bouv. Inst. Index, *h. t.*; 2 Hilliard on Real Property, § 23, p. 10. See also §§ 24–28, p. 11, Id.; *Lewiston* v. *Proctor*, 27 Ill., 414; *Daniels* v. *The People*, 21 Ill., 349; 439; *Johnson* v. *Stayton*, 5 Harr. (Del.), 448; Ang. Highw., § 131.

And " where a public road has been used for twenty years, the owner of the land over which it passes acquiescing therein, the law presumes a dedication." *Green* v. *Oaks*, 17 Ill., 249. Also see a large number of cases bearing upon this point cited in Angell on Highways, p. 144 and note.

But the instructions go so far as to charge that the law cited by us does not apply in any instance to roads over uninclosed land or woodland or prairie.

The cases make no such distinction, though in some it is held that stronger acts of adverse possession must be shown. *Hutto* v. *Tindall*, 6 Rich. (S. C.), 399; 3 Greenl. Ev., p. 349, note; *Worral* v. *Rhodes*, 2 Whar., 427 — a very strong case and one exactly in point; *Wells* v. *Howell*, 19 John., 385; 2 Roll. Abr., 565, *l.*, 47; 6 Com. Dig., tit. "Trespass," *d.*, p. 383; see also *Chamber* v. *Fury*, 1 Yeates, 167; and *Cooper & Smith*, 9 Serg. & Rawle, 31.

In *Commonwealth* v. *Cole* (26 Pa. St., 187), it is held that " the use of the ground by the public for more than twenty years makes it a public road as effectually as though it had been originally laid out and opened by the proper authorities.

The last case was one somewhat similar to the one at bar. The defendant was a road supervisor, and removed

a fence across a road, which had become a highway by use. The action of the defendant was upheld.

And in *Smith* v. *The State* (3 Zabr., 130), "the use of the land by the public as a highway or street for more than twenty years is conclusive proof of dedication." Also see *Lansing* v. *Wiswall*, 5 Denio, 213.

" In some cases a dedication of property to public use, as, for instance, a street or public road, where the public has enjoyed the. unmolested use of it for six or seven years, has been deemed sufficient evidence of dedication." *Bailey* v. *Howell's Lessees*, 6 Pet., 513. Also see *Rugby Charity* v. *Merriweather*, 11 East., 376, note.

And in another case twelve years has been held sufficient. And in South Carolina the term of prescription is five years. *Martin* v. *Bigelow*, 2 Aiken, 184; *Anderson* v. *Gilbert*, 1 Bay, 375.

And in Indiana, where it appeared that a road had been worked and traveled for fifteen years, it was held that user for fifteen years was sufficient to establish the road. *Hays* v. *The State*, 8 Ind., 425; *Odiorne* v. *Wode*, 5 Pick., 424.

Ten years being the period of limitation under our statute, a prescriptive right will be acquired by the uninterrupted use of a highway for that length of time, especially when with the knowledge and acquiescence of the owner.

*J. M. Beck* for the appellee.

I. Highways derive their existence in two ways only: First, by authority of the legislative power, exercised by general or special enactments under the necessary power of the State to condemn private property to public use. Second, by dedication of the land, used as a way, to public use by the owner of the soil. Bl. Com., b. 2, p. 35, note; Ang. High., §§ 76–83, 132, 133; 2 Smith's Lead. Cas. (Hare & Wal. notes), 176; 2 Hill. Real Prop., p. 35, § 1, p. 41, § 22.

Highways or public ways never derive their existence from prescription. Angell on Highways, § 102.

Prescription is a *personal* usage — securing a right to one or more persons; the public can hold no right by prescription. Bl. Com., book 2, p. 264.

" Prescription presupposes a *grant*, without requiring any further evidence of its having been made than the requisite time of enjoyment, and where the extent of the use is the evidence of the extent of the grant." 2 Washburn Real Prop., 450, § 4.

" A prescription can, in general, only be for things which may be created by grant; for the law allows prescription only to supply the loss of a grant." Greenleaf's Cruise, tit. 30, ch. 1, § 22.

A grant, as all other conveyances, must have a proper party to secure the grant — a grantee. The public cannot be the grantee in such an instrument, therefore, "the public cannot acquire an easement by prescription. A prescription presupposes a grant; and in case of the public there can be no grantee." *Curtis* v. *Keesler*, 14 Barb., 511; Greenl. Cruise, tit. 30, ch. 1, § 11.

Highways or public ways, therefore, cannot be held by prescription, and the doctrines thereof are not applicable to such public easements.

The only questions then for our consideration, are those growing out of the instructions upon the doctrines of dedication, and what is sufficient evidence to establish dedication.

II. Dedication is the appropriation of land for the use of the public as a highway, by the owner of the soil, and accepted for such use by the public. Angell on Highways, § 132.

In order to dedicate, no particular formality is required. It is made by any act of the owner of the soil indicating a clear intention to dedicate. " The vital principal of

dedication is the intention to dedicate, the *animus dedicandi*, and whenever this is unequivocally manifested, the dedication, so far as the owner of the soil is concerned, has been made." It is a "conclusion of fact to be drawn by the jury from the circumstances of each particular case, the sole question as against the owner of the soil being, whether there is sufficient evidence of an intention on his part to dedicate the land to the public as a highway." Angell on Highways, § 142, and the numerous authorities quoted by the author; *Gould* v. *Glass*, 19 Barb. S. C., 195. See also 2 Smith's Lead. Cases (Hare & Wallace's notes), pp. 181, 182, where will be found an excellent collection of authorities sustaining the above doctrines.

"Dedication being the joint effect of an intentional appropriation of the owner of the land, and an acceptance by the public, it follows that no presumption of dedication can be made when circumstances exist which negative the presumption of an intent to dedicate." Angell on Highways, § 152. No user however long without the knowledge of the owner of the soil is evidence of the *animus dedicandi*.

User is evidence of dedication. The time during which the user exists is not uniform—from the nature of the case it must vary. In one case user for one year would be quite as strong evidence of dedication as twenty years in another. The special circumstances of each case must govern. Smith's Lead. Cas. (Hare & Wallace), 176, 182.

The use of uninclosed lands in this State is no presumption of their dedication as a highway, and however long that user continued and whatever be its nature, yet the public acquire no right of way which will deprive the owner of the right to inclose his lands when his interests and convenience require it. This has been recognized and acted upon by the people as law since the first settlement

of the State. It is recognized, too, by the courts of other States, and by elementary writers, as the settled law of the land. Angell on Highways, § 151; 2 Hilliard Real Prop., p. 23; *Warren* v. *The President of the Town of Jacksonville*, 15 Ill., 241; *Stacy* v. *Miller*, 14 Mo., 478; *Badeau* v. *Mead*, 13 Barb. S. C., 328; *Hewins* v. *Smith*, 11 Met., 241; *Hutto* v. *Tindal*, 6 Rich. (S. C.), 396; *Hoggs* v. *Gill*, 1 McM. (S. C.), 329; *State* v. *Thomas*, 4 Harr. (Del.), 598; *Pipps* v. *The State*, 7 Black., 514; 2 Hilliard Real Prop., p. 44, § 33, quoting *Inhabitants, etc.*, v. *Beach*, 2 Pick., 58, and *Emerson* v. *Wiley*, 7 Pick., 68; *Harding* v. *Jasper*, 14 Cal., 642; *Kelly's Case*, 8 Gratt., 632; *Stacy* v. *Miller*, 14 Mo., 478; *Watt* v. *Trapp*, 2 Rich., 136; *Gibson* v. *Durham*, 3 Rich., 85.

DILLON, J.—To the printed arguments of the respective counsel, we have given that careful attention which is due to the laborious research and marked ability which they display, as well as to the important questions involved.

*1. HIGHWAY: dedication: use and acquiescence.*

The adjudged cases, with respect to highways by dedication or by prescription, are not, in all points, susceptible of being reconciled. Some deny that highways can be established by prescription, and affirm that they can be established in two ways only : first, under the statute; and, second, by *dedication*. Other cases hold that highways may derive a lawful existence from long continued use by the public under a claim of right. The cases differ as to the effect of long user by the public. Some hold that, if continued for the period which, under the statute of limitations, would bar the right of the owner of land to recover the same, this is conclusive evidence against the owner, of an intent to dedicate for a highway the land so used. The period fixed by the statute of limitations is applied to such cases by way of analogy.

Others hold that user, even for such a period, does not conclude the right of the owner, who may, nevertheless, show that he did not intend to dedicate, and rebut, if he can, any presumption of such an intent derived from mere use by the public. Many of the authorities make the effect of user by the public, depend largely upon the character of the land and of the country in or through which the highway is situate.

We propose to limit our examination of this subject to the questions arising upon certain instructions to the jury, and to state, rather than argue and discuss at length, our view of the law applicable to those questions.

The third and fifth instructions asked for by the plaintiffs and given by the court to the jury, are as follows:

"3. No right of way or road by prescription or use alone, without evidence of dedication, can be acquired over uninclosed prairie, wood or timber land, and to support the claim of dedication, either an express grant must be shown, or some affirmative act on the part of the owner clearly showing his intention to dedicate it, or to allow the use of it as a public road."

"5. Mere acquiescence in the use of uninclosed prairie or woodland, for a road, during a period of time, however long, will not be evidence of dedication, and to support the claim of dedication, either an express grant must be shown, or some affirmative act on the part of the owner clearly showing his intention to so dedicate it or allow the use of it as a public road."

It is correctly stated by the appellee, in his written argument, that these two instructions "bring squarely up, the point of contest in the case, whether use, alone, by the public, for time, however long, of uninclosed prairie or timber land, will make a public highway; and whether to sustain a highway over such lands by dedi-

cation, some affirmative act clearly showing an intention to dedicate must be proven."

It is our opinion that, in the third and fifth instructions, *supra*, the law is too broadly stated. These instructions lay down the proposition that, however long a road may be used by the public, and however long the owner of the land may acquiesce therein, these facts " will not be evidence of a dedication, and to support a dedication either an express grant must be shown, or some affirmative act on the part of the owner clearly showing his intention to dedicate it or allow the use of it as a public road." We are of opinion that long use, and long acquiescence in such use by the owner of the land, are, in and of themselves, evidence of a dedication. How much weight they are entitled to, depends upon the situation of the land, the nature of the right claimed and exercised by the public, the knowledge of the owner, etc. For example, there is evidence in this case tending to show that the road in question was traveled by the public for nearly or quite twenty-five years, and that the public authorities, claiming it to be a public highway, had expended money and labor in its amendment and repair. Suppose the defendant knew these facts and never objected until 1862, would there not be here evidence from which a court or jury would, should, or might find a dedication? Yet there would be " no express grant " and " no affirmative act " on the part of the owner, there would be only " long use " and " mere acquiescence."

We are prepared to go further, and to say, if the public, certainly where this is with the knowledge of the owner, has claimed and continuously exercised the right of using land for a public highway, for a period equal to that fixed by the statute for bringing actions of ejectment, their right to the highway, as against such owner, is complete, there being no

2. —— statute of limitations.

Onstott v. Murray.

proof that the road was so used by leave, favor or mistake. How far the owner is bound, if at all, to take notice of the rights claimed by the public over his land, we need not stop to discuss.

. In thus stating our views of the true doctrine on this subject, it is proper to add that this doctrine should be carefully applied, especially to uninclosed and open lands. A landowner is not to be concluded, who, without knowing that a claim of right is being asserted on the part of the public, allows his neighbors to pass over his land for their mere accommodation to obtain fuel, or for other like purposes.

A block of land often lies open in a town or city, and, for mere convenience, foot passengers or even wagons may for years pass over it diagonally, making thereon a well defined path or road.

Ordinarily, there would be here no dedication, however long this was continued. But if the same amount of travel were at the end of a recorded street, and between that and another street, long use and long acquiescence would be evidence, and, if continued sufficiently long, might be conclusive evidence, of a dedication. And the same principle will measurably apply to roads in the . country.

In the case at bar we have not before us the evidence so that we can form any opinion upon the merits. 3. —— case varied by circumstances. If it was a mere neighborhood, local or timber road, much stronger evidence of a dedication by the owner, or prescriptive right by the public, would and should be required, than if it were a thoroughfare, or part of an acknowledged highway between towns, or leading to a town, and as such constantly traveled.

In cases of implied or presumed acquiescence or consent on the part of the owner, very much depends upon the location of the road, the amount of travel, the nature of

the use by the public, the rights asserted by the public, the knowledge of the owner, and like circumstances. Each case must be largely decided upon its own circumstances. But we cannot go to the length asked by the appellee's counsel, without laying down principles which would blot out a vast number of highways in the State, which have no other legal existence (many of the early records being lost or very imperfect) than that which is derived from long and uninterrupted use by the public.

Reversed.