## WARING *v.* CITY OF LITTLE ROCK.

Opinion delivered May 16, 1896.

STREET—PRESCRIPTION.—A street across certain lands exists by prescription where a plat showing the existence of such street, made by the sheriff and duly recorded, has been in existence for twenty-five years, and such plat has been recognized by the owners of the land, and the city has worked such street, and, ten years before suit, permitted a street railway company to lay its track and operate its cars thereon, and has allowed a telephone company to erect its poles thereon.

SAME—ACCEPTANCE BY ORDINANCE.—The statute providing that no street dedicated to public use by the proprietor of ground in any city shall be deemed a public street unless the dedication shall be accepted by ordinance (Sand. & H. Dig., sec. 5209,) has no application to a street established by prescription.

SAME—ESTABLISHMENT BY PRESCRIPTION—EVIDENCE.—It requires less proof to establish a street by prescription across certain land where such street serves to unite the disconnected ends of two established streets than where the street claimed runs diagonally across a block.

Appeal from Pulaski Chancery Court.

DAVID W. CARROLL, Chancellor.

STATEMENT BY THE COURT.

This is a controversy concerning the right of the city of Little Rock to control and keep open a street across a piece of land claimed by appellant, Waring.

The suit was brought by Waring to enjoin the city from interfering with his possession of such land. The city claimed that Eighth street extends across said land, and that it has been established across said land both by dedication and prescription. The land was at one time owned by Mrs. Matilda Johnson. In the year 1868, Edwin H. Hilliard recovered a judgment against said Matilda Johnson. An execution was issued thereon, and the sheriff levied the same upon a tract of land

belonging to Mrs. Johnson, containing six acres. The land in controversy lay adjoining the land levied upon, but had been previously transferred by Mrs. Johnson to A. H. Sevier. Before selling the land levied upon, the sheriff divided it into lots and streets, and platted the same, with other land adjoining it, as "Johnson's Addition." The land in controversy was a part of the tract owned by Sevier, and was included in the plat of said addition made and recorded by the sheriff. The plat of said addition showed Eighth or Holly street as extended across the land in controversy. This plat of Johnson's addition was filed for record on the 9th of December, 1868. There is nothing to show that the sheriff had authority to make and record this plat, but, after the same was made, the owners of land included therein described such property in all subsequent conveyances thereof as in Johnson's addition to the city of Little Rock. Waring and Fletcher, from whom Waring purchased the land, testified on the trial that the land had never been used as a street by the public; that the travel was not over it, but diagonally across the adjoining lots; that the city had done no work on the property, nor repaired it as a street. Fletcher also testified that, about a year after the street railway had been built, he served notice on the president of the company that the company had built on his property, and the president, for the company, recognized his rights, and promised not to plead the statute of limitations.

On behalf of the city, J. N. Jabine testified as follows: "I have known Eighth street since 1861. It was an open street at that time, to the best of my recollection. It has been used as a street continuously since. I never heard of any dispute about it being a street until this suit was brought. East and west of the property in controversy the houses and fences are all built evenly

with reference to Eighth street being a regular street. * * * * * The street railroad threw up a track in the center of Eighth street, and injured the travel very much, but the people could and did travel it on either side of the dump. Before the track was built, there was, I suppose as much travel there as on any of the out streets, with the exception of Ninth street. I sometimes rode over Eighth street in the street cars, and sometimes walked over it. I live two blocks from the property in controversy. So far as I know, this street has been used continuously since 1861."

John E. Geyer, who stated that he lived near the property in controversy, testified for the city as follows: "I have known Eighth street, as projected through or by the property in controversy, about twenty-one years. I bought the property that I live on now about that time, and Eighth street was a street then. It was a street then through the property in controversy. Prior to the time the street railway threw up their levee or dump on Eighth street, it was as good as three-fourths of the streets in the city, and it was used as a public street by wood wagons, buggies, and other wagons. There was not much travel over it. I never heard of any objection to its being used as a street until today, as I thought Mr. Waring was suing for damages for the dump being put and left there. I have heard Mr. Jabine's testimony read. The statements made by him in reference to the fences and buildings, condition, and travel of the street for the last fifteen years are true, and I adopt it as my deposition."

The testimony of W. D. Holtzman was substantially the same as that of Jabine and Geyer. He also testified that, "before the street railway was built, Eighth street over the property in controversy was worked by the city as much as other streets. The ditches were

cleaned out, and property drained. It was not done often, as not much work was done on the streets."

The following facts were also proved : About the year 1882, the city, by an ordinance, permitted a street railway company to build a street railway over this property, as part of Eighth street. The cars of the company were run over it regularly for several years, until the track was changed to Ninth street. A telephone company was permitted to erect its poles along Eighth street without the consent of either Waring or his grantor. H. L. Fletcher, the grantor of Waring, in the year 1887, made application to the city council to be paid for the use of this property by the city, stating that the city had taken possession of it. Appellant, Waring, afterwards, in 1891, made a similar application to be paid for the use of the property by the city. The city paid them nothing, and in no way recognized their right to obstruct the street. The other facts sufficiently appear in the opinion. The chancellor dismissed the complaint of appellant for want of equity.

*Marshall & Coffman*, for appellant.

Appellant shows a chain of title from the U. S. government, and an appropriation for public use as a street must be shown by a clear preponderance of the testimony to have been done in some of the modes known to the law. There was no express dedication of the land. The plat filed by the sheriff was abortive as to lands lying west of those sold by him, in the suit, as to those who were not parties, and who never joined in or assented to its execution, but always asserted rights antagonistic to it. Land can only be dedicated by its owner. 42 Ark. 66; 22 Pac. 623; 29 Kas. 28. Nor has there been any implied dedication by conduct of the owners amounting to an estoppel. In such case the intent to yield the land to public use must be clear and unequivocal. Dill. Mun.

Corp., sec. 495; 5 Am. & Eng. Enc. Law, 400; 59 Ark. 26. The use by the public in this case was permissive only. 29 Atl. 370; 58 Am. Dec. 610; 60 *id.* 407; 9 Am. & Eng. Enc. Law, 367; Ell., Roads, etc. 93, 126; 59 Ark. 35; 39 Am. Dec. 754. In 59 Ark. 26, and 47 *id.* 431, there were unmistakable acts of the owner and the public authorities, tending to show dedication and adverse user, and even these were not held conclusive. Here nothing was done by the city, except perhaps to drain off the water at rare intervals. Knowledge of work or travel by the owners is essential to proof of intent to dedicate. Elliott, Roads and Streets, 126; 41 N. J. Eq. 489; 58 Iowa, 567. The public travel and work may be perfectly consistent with the rights of the owner. The travel was not confined to any particular route, and is not shown to have been confined to the so-called street at all. There are no circumstances to show that the use was not merely permissive. 24 Am. & Eng. Enc. Law, 10, 11 and notes; 5 *id.* 409. Even if this land, or any part of it, has been dedicated by estoppel or otherwise, it is still but a private way, to be insisted on only by those who have acquired rights, unless the city has, in the manner required by law, adopted it as a public street and highway. Without this she cannot protect it by any civil or criminal proceedure. 24 Am. & Eng. Enc. Law 11, 12; Dill. Mun. Corp., 505, and notes; 5 Strobh. (S. C.) 217; 58 Ark. 142; 47 Ark. 431; 31 Pac. 338; 3 Pick. 408; 9 Bush, 61; 8 Gratt. 632. When there is a statutory requirement, it is exclusive. 5 Am. & Eng. Enc. Law, 414; Elliott, Roads and Streets, 118. Slight and unequivocal acts are not sufficient. *Id.* 115, 116; 15 N. E. 854; 17 *id.* 43; 65 Mich. 241. The street must be accepted. Gantt's Dig., sec. 3210; Mansf. Dig., sec. 738; 58 Ark. 142; 44 *id.* 537. The act of 1873 does not apply, for these lands were not decided,—at least those west of Ferry street. 58 Ark. 142; 44 *id.* 537. The

city's claim by prescription is untenable, because (1) such right can only grow out of adverse user in a well defined line of travel for the statutory period, under claim of right with knowledge of the owner or circumstances of notoriety.    44 Ark. 537; 50 *id.* 53; 47 *id.* 66; 1 Am. & Eng. Enc. Law, 264; 9 *id.* 366–9; 19 *id.* 12, 15, 23, and notes.    And (2) a mere user by private individuals, who have no authority or desire to bind the city, but simply act upon their own choice, however long, can never start the statute.    Cases *supra*; 35 Kas. 717; 55 Atl. 618; Angell, Highways (3 Ed.), 151.    In those cases where prescription was sustained, there was work done or some distinct recognition by public authorities.    83 Am. Dec. 264; 110 Ind. 509; Elliott, Roads, etc. 137, and note; 19 Atl. 1051; 30 Pac. 64; 17 S. W. 520.    And the assertion of their rights by the owner defeats the prescription.    19 Am. & Eng. Enc. Law, 22, and note; 10 L. R. A. 484, and note; 59 Ark. 35.    The reference to Eighth street in Fletcher's deed would create an estoppel between the parties, but does not inure to the benefit of others, or of the city.    As to them, it is no more than a reference to a brook or other natural object.    63 Mich. 165; 12 Atl. 664; 16 *id.* 631, 59 Ark. 12; 25 Pac. 673; 29 N. E. 274.

*J. W. Blackwood*, City Attorney, for appellee.

The proof shows that this property has been used as a public thoroughfare for thirty years.    All the city maps for twenty years show it as Eighth street.    Houses and fences are built with reference to it as a street. Fletcher's deed to appellant describes it as bounded north by Eighth street "and 150 on Eighth street." In 1868 it was platted and recorded, and shows Eighth street extended through this property, *60 feet wide.*    It was labelled "Johnson's Addition."    It is true there was no bill of assurances, but all these facts show a common law dedication, and a grant or prescription will be presumed.    Broom's Leg. Max., p. 729; Mech. Pub. Off.,

sec. 579; 10 Am. Dec. 232; 64 *id.* 680; 1 Gr. Ev., secs. 19, 20, 21, 38*a* (13 Ed.); 2 Rob. (La.) 374; 24 Am. & Eng. Enc. Law, p. 5, note 5; 13 *id.* p. 509; Ell. Roads, etc., p. 111; 31 Am. & Eng. Corp. Cases, p. 278. The proof necessary to establish a right by prescription, and the law governing the same has been settled. 47 Ark. 66; *Id.* 431; 50 *id.* 53; 58 *id.* 494; *Ib.* 142. The street was accepted by lapse of time; also by the act of 1873. 58 Ark. 142. In 58 Ark. 494, there was no acceptance, nor had the ten acres been sub-divided. Proof of any public work done on land to make it passable as a street, or near approaches to it to facilitate access to it, and the public use of it, are admissible, and shows not only use and possession of it as a highway, but acceptance of it as a highway. 9 N. E. 269; 5 *id.* 783; 11 *id.* 43; 24 N. W. 287; 11 *id.* 124; 33 *id.* 785; 106 Ill. 353; 30 N. W. 593, and note; 12 Atl. 130; 47 Ark. 436; 58 *id.* 494. When a street has been in use for a number of years, acceptance is presumed. 45 N. Y. 129; 47 Ark. 436; 12 Atl. 130. The assent of the owner will be inferred from silence and acquiescence in the public use. 2 R. I. 493, 499. There is a distinction also where the property separates the ends of abutting streets. 12 Atl. 130. It is too late to challenge the plat of Johnson's Addition, no matter who made it. 24 Am. & Eng. Enc. Law, p. 6, and note 5. Where land in a city is conveyed as bounded by, or bordering on, a street, the vendor and vendee are estopped from denying that it is a public highway. 54 Am. Dec. 671, and note on 681; 24 Ark. 106; 50 *id.* 471–2; 24 Am. & Eng. Enc. Law, p. 7, and note; 19 Pac. 485; 5 S. W. 352, and note; 5 Atl. 750; 11 Pac. 808; 1 So. 512. When a "street" is mentioned, it means a street in its full sense. Elliott, Roads and Streets, p. 15.

**When street established by prescription.** RIDDICK, J., (after stating the facts). The question in this case is whether Eighth street of the city of

Little Rock extends across the land claimed by appellant. The appellant, Waring, contends that it does not, and brought this suit to enjoin the city from interfering with his possession, and from keeping open a street across said property. On the other hand, the city contends that such street does extend across the land claimed by Waring; that it was platted across such land over a quarter of a century ago, and has been used continuously since as one of the public streets of the city; and that now it is established by prescription. It is settled law in this state that a street or highway may be established by prescription. "If the public, with the knowledge of the owner of land, claim and continuously exercise the right of using the same for a public street or highway for a period equal to that fixed by the statute for the limitation of real actions, which in this state is seven years, the highway thereby becomes established, unless it appears that such use was by leave, favor, or mistake." *Howard* v. *State*, 47 Ark. 431; *Patton* v. *State*, 50 *id.* 53; *Onstott* v. *Murray*, 22 Iowa, 458.

Eighth street was platted over the land in controversy, as shown by the plat of Johnson's addition to the city of Little Rock, in the year 1868; and the proof tends to show that it was used as a street long before it was platted as such. The plat was made by the sheriff of the county, and duly recorded. It is said that the sheriff had no authority to make and record this plat, and that his action in that regard could not affect the owners of land who never assented to its execution. There is nothing to show whether or not the sheriff had authority to make and record this plat. Such an act, if unauthorized, could of itself alone have no effect upon the right of non-assenting land owners, but we find here that the land owners recognized this action of the sheriff by describing such lands in all subsequent

conveyances executed by them as located in "Johnson's
Addition." This shows conclusively that they knew of
the existence of this record, and tends to show that
they assented to its execution. From 1868, the time
when said plat of Johnson's addition was made and
recorded, the public have continuously exercised the
right of using Eighth street, as shown on said plat,
over the land in controversy as a public street, and it is
now too late to deny that right. There is nothing in
the evidence to show that such use was by leave, favor
or mistake. On the contrary, we think the evidence
shows that such use was under a claim of right, and
adverse to the claim of appellant. A plat made and
recorded by the sheriff of the county showed Eighth
street as extended across the land. The city exercised
the right of controlling the street across the land, as it
did other portions of Eighth street, by permitting a
street railway company to lay its tracks and operate its
cars over said street and the land in controversy. A
telephone company was allowed to erect its poles along
the street, and over this property. The street railway
was laid in the year 1882, and one of the witnesses
testified that, "before the street railway was built,
Eighth street was worked by the city over the property
in controversy, as much as other streets." This action
of the city in permitting a street railway company to
lay its rails and operates its cars along this street, and
over the property in controversy, was adverse and
opposed to the claim of appellant, and shows clearly
that the city and public claimed a street over this land.

The testimony of Fletcher, the grantor of appel-
lant, that, a year after the street railway had been built,
he gave notice to the company that he claimed the land,
and that the president of the company acknowledged
his claim, to the extent of promising not to plead the
statute of limitations, can have but little effect upon the

right of the city or public to use such street, for the president was the agent of neither city nor public. The action of the city in granting the right to the company to lay its tracks along Eighth street on this property was known to Fletcher, the grantor of appellant, and was notice to him of the adverse claim and use by the city and public, and this was over ten years before suit was brought. Fletcher afterwards, in 1887, made application to the city council to be allowed pay for the use of this property by the city. But the city ignored his claim, and the public continued to use the street. This application of Fletcher shows that he knew that the city had taken possession of the property as a street, and the fact that the city ignored the application tends to show that the use of the street was under a claim of right. In the year 1887, Fletcher, before selling to Waring the land in controversy, sold and conveyed him other lots adjoining and bounded on the north by this land, which the city now claims as Eighth street. In the deed which Fletcher then executed to Waring, he described such land as in "Johnson's Addition," and bounded on the north by Eighth street. It is apparent from this that both Fletcher and Waring then knew of the plat of Johnson's addition, and recognized the fact that the public were using a street across this land. They located it exactly as it is shown on the recorded plat of Johnson's addition, and as the city now claims that it is located. This tends to contradict their statement that the public had not been using the land as a street. If it was not known and used as a street, why should they call it a street, and describe land bounded on the north by this property as "bounded on the north by Eighth street?" This knowledge on their part is again shown by the fact that, when Waring purchased the land in controversy from Fletcher, it was conveyed by quit-claim deed, and for a consideration dependent

upon the result of this lawsuit, which was then in con-
templation.

It is said that there is no proof of the acceptance of
the street by the city. If this was necessary to be
proved, it is shown by the action of the city in controlling
it, and by the continuous use thereof by the public for a
long period of time. *People* v. *Loehfelm*, 102 N. Y.
1; Elliott, Roads and Streets, 115, and cases cited.

<div style="float:left; font-size:smaller;">When neces-<br/>sary to accept<br/>street by<br/>ordinance.</div>

Section 5209, Sand. & H. Dig., which provides that
no street dedicated to public use by the proprietor of
ground in any city shall be deemed a public street unless
the dedication shall be accepted by an ordinance, does
not apply to streets established by prescription. The
object of that statute was to prevent the public from
being burdened with the care of unnecessary streets.
The long and continuous use by the public of a street or
highway affords conclusive evidence of its necessity and
usefulness. It was probably for this reason that the
statute was confined in its operation to streets "dedi-
cated by the proprietor of ground." *Jennings* v. *Inhabi-
tants of Tisbury*, 5 Gray, 73; *Commonwealth* v. *Coupe*,
128 Mass. 63; *Patton* v. *State*, 50 Ark. 53.

In their motion for rehearing, counsel for appellant
contend that there is no evidence to establish the width
of this street, and ask, why has the court not adopted
sixty feet as the width of the street, instead of fifty
feet? The answer to that is that the court has not
determined, nor is it necessary to determine, what is the
width of this street, whether fifty or sixty feet. Appel-
lant built a fence across this street, and it was removed
by the city, and he thereupon brought a suit to enjoin
the city from entering upon or interfering with his pos-
session of the land. There was no allegation concerning
the width of the street made by either plaintiff or defend-
ant. The only question at issue between the parties

was whether Eighth street extended across the land of appellant.

We fully agree with counsel that the doctrine that roads may be established by prescription should be cautiously applied to roadways across wild land or vacant city blocks, but the argument does not apply to the facts of this case.   Judge Dillon stated the rule in *Onstott* v. *Murray*, 22 Iowa, 457, as follows :   "A block of land often lies open in a town or city, and, for mere convenience, foot passengers or even wagons may pass over it diagonally, making thereon a well-defined path or road.   Ordinarily, there would be no dedication, however long this continued.   But if the same amount of travel was at the end of a recorded street, and between that and another street, long use and long acquiescence would be evidence, and, if continued sufficiently long, might be conclusive evidence, of a dedication."   If the contention of appellant is correct; Eighth street was never properly laid out or established over the land in controversy, but was cut in two parts, bisected by such land.   There is no dispute that the street came up to the land on both sides, and that, if continued in a straight line until the two ends met, it would pass over this land.   Without the use of a street across this land, the two parts of the street would be separated by a space of 150 feet, and the public would be put to much inconvenience.   The roadway or street used by the public connected the two ends of the street, and made the street continuous.   Under these circumstances, the use of this land by the inhabitants of the city as a part of a public street was, when taken in connection with the control exercised by the city, well calculated to notify the owner, who knew of such use, that it was done under a claim of right.   As there was no gate, nor anything to show to the contrary, he ought to have known that the public would reasonably suppose that all portions of

Sufficiency of proof of establishment by prescription.

such street were owned by the city, and would use it as
a public street.   But the same grounds for such a belief
would not exist in the case of a road passing across a
vacant block.   Public streets do not usually run diag-
onally across blocks, and the indications in such a case
would be that the use of the road was permissive, and
not adverse to the rights of the owner of the block.   For
this reason, it requires less proof to establish a street in
a case of this kind than when one undertakes to show
that a road has been established by prescription across.
vacant land in the country, or where the street claimed
runs diagonally across a block.   *Harding* v. *Jasper*,
14 Cal. 647; *Onstott* v. *Murray*, 22 Iowa, 457.

We are not called on to determine whether a street
can be established by mere use on the part of the public
without evidence of any control or acceptance by the
city, for such control is shown here.   The city exercised
the same control over this land as it did over other por-
tions of Eighth street.

This case seems to be one to which the doctrine of
prescription is peculiarly applicable.   We find here an
ancient recorded plat of Johnson's addition, made by
the sheriff of the county, showing the street as it is
now located, and afterwards long and continuous use by
the public.   It is not unreasonable to believe that the
sheriff had authority to make and record this plat, but
the evidence of that authority is lost.   The doctrine of
prescription, which rests on the presumption, arising
from long and continuous use by the public, "that the
street was at some anterior period laid out and estab-
lished by competent authority," may, under such cir-
cumstances, justly be invoked to supply the place of
this lost evidence, and to show that the right to the use
of the street is now established.   *Reed* v. *Northfield*,
13 Pick. 98.

We have twice considered this case and the learned briefs furnished us by counsel for appellants, but we still feel convinced that the chancellor properly refused to enjoin the city from the use of a street over the land claimed by appellant.    The decree is affirmed, and motion to rehear denied.

[NOTE—For public user as acceptance of dedicated highway, see note to *Southern Pac. R. Co.* v. *Ferris* (Cal.), 18 L. R. A. 510.—Rep.]