# ARKANSAS STATE HIGHWAY COMMISSION *v.*
## IRMA LINCOLN HAMPTON ET AL

5-4383                            423 S. W. 2d 567

Opinion delivered February 5, 1968

*John R. Thompson* and *Thomas B. Keys,* for appellant.

*House, Holmes & Jewell,* for appellees.

CONLEY BYRD, Justice. Appellant Arkansas State Highway Commission brings this appeal from a jury verdict and judgment for $20,000 following the taking of 29.59 acres out of 130.59 acres owned by appellees.

Appellant urges that the trial court erred in permitting the landowners' witnesses to testify that their

values were based upon this land having public access without showing that there was public access to the property, and in not striking the testimony of appellees' expert witnesses after appellees failed to show there was public access to the property.

One of the landowners and appellees' two expert witnesses testified that they had in the past entered the property on the old Military Road which had been in existence since the Mexican War, running from Helena to Arch Street Pike in Little Rock. The location of the road shows up on aerial photos introduced in evidence. Mr. C. V. Barnes testified that he had used the old Military Road to get to the property as early as 1929 or 1930, that the road was not now passable by car, that a four-wheel drive vehicle was necessary, and that the road was no paved highway, but it was access, which no longer existed since the new highway had cut it in half. Mr. Lincoln, one of the landowners, stated that he had been on the property a number of times, and that when he heard about the proposed highway, he and an adjoining landowner had gone in on the old Military Road by pick-up truck and had seen hunters and picnickers on the property. Mr. Lloyd Pearce also testified that before the taking the road was passable by four-wheel drive vehicle, but after the taking one could not use the road because the non-access highway bisected it, and that the old Military Road had been some type of access before the taking.

There was proof, both oral and documentary (photographs), that the old Military Road existed and had existed for a number of years. Testimony also showed that this road had been used for access to the subject property for some years—rough, unpaved, even primitive access, but access it was, now severed by a limited access highway. Generally speaking, an easement acquired by grant or prescription cannot be lost by mere nonuser for any length of time, no matter how great. The nonuser must be accompanied by an express or im-

plied intention to abandon, 25 Am. Jur. 2d § 105, which intention was not shown here.

Appellant's second point is that the trial court erred in not striking the before and after values of Mr. C. V. Barnes because he based his market for rock on sales that took place after the date of taking.

This court has long adhered to the rule that a condemnor should not be required to purchase property at a price enhanced by the particular public project for which the property was taken. *Arkansas State Highway Comm.* v. *Griffin*, 241 Ark. 1033, 411 S. W. 2d 495 (1967); 4 Nichols, Eminent Domain § 12.3151 (3d ed. 1962). There is no testimony in this record that the construction of this piece of highway increased the value of lands in the area. Mr. Barnes testified that the property has granite and that his research showed that from 1950 to 1962 the United States market for granite had increased 300 per cent, due to factors such as increased river development and highway construction throughout Arkansas.

The subject property was taken in February 1962; trial was held in 1966. Mr. Barnes testified in detail about nine sales of similar property, both before and after the taking. The three sales before February 1962 ranged from $300 to $1,000 per acre; the sales after the taking (with one exception) ranged from $1,000 to $1,850 per acre. He explained how he charted these sales and arrived at the conclusion that as of February 1962 the low trend was $750 per acre and the high $1,125 per acre. He then testified that the February 1962 value of the land taken was $22,192.50 (about $740 per acre), and damage to remaining land was $10,557.57, a total of $32,750.

Although 5 Nichols, Eminent Domain § 21.31(2) (3d ed. 1962) states that evidence of sales made subsequent to the taking is not admissible unless the sales

were made almost simultaneously with the taking, the treatise prefaced this general rule with the statement that "there is ample authority to the contrary." Simply stated:

"There is authority for the admission of evidence of sales of comparable land made subsequent to the date of condemnation where the sales considered involve land that was not benefitted or its market value affected by the public improvement causing the condemnation." *State* v. *Williams,* (Texas 1962), 357 S. W. 2d 799.

We see no error in the court in its discretion admitting comparable sales, not too remote in time, and not having been enhanced or decreased in value by the project or improvement which prompted the taking.

Appellant's third point is that the court committed reversible error in permitting Mr. Barnes to testify as to what the price of one foot of granite per acre would be at five cents a ton.

4 Nichols, Eminent Domain § 13.22 (3d ed. 1962), "The rule is widely prevalent in this country that the existence of mineral deposits in or on land is an element to be considered in determining the market value of such land." (*Arkansas State Highway Comm.* v. *Elliott,* 234 Ark. 619, 353 S. W. 2d 526 [1962]).

We have permitted market value of minerals to be determined by multiplying the mineral quantity by its fixed price per unit in an unusual situation such as occurred in *Arkansas State Highway Comm.* v. *Cockran,* 230 Ark. 881, 327 S. W. 2d 733 (1959), where the land taken had been leased at royalty for mining a certain mineral. However, that was unusual, and this court in *Arkansas State Highway Comm.* v. *Stanley,* 234 Ark. 428, 353 S. W. 2d 173 (1962) fortified the general rule that market value of land may not be determined simply by

multiplying the estimated quantity of mineral by a unit price. In the case at bar, this error did not occur.

On cross-examination of appellees' expert, Mr. Barnes, the state asked him if he knew about a 1957 Brazil sale. Barnes testified that "it wasn't an outright sale . . . The consideration was $278 per acre plus a 5-cent per cubic yard royalty on all rock quarried off the property." Barnes admitted that he did not know whether that consideration was stated in the deed, but that he had verified the agreement with both parties to the transaction and that the purchaser thought the property, considering royalty, was costing him $2,000 per acre. On re-direct, Mr. Barnes was asked what the 5-cent royalty meant where an acre of ground had granite one foot deep. Mr. Barnes replied that in the Brazil sale the royalty was 5 cents per cubic yard, which would figure approximately $150 per acre, one foot deep.

The fact that the Brazil property had sold for $278 per acre plus a 5-cent per cubic yard royalty was already before the jury without objection. The testimony here objected to did nothing more than make a mere calculation which the jury itself could have made. Since no effort was made to capitalize this into market value of either the Brazil property under discussion or the subject property, we fail to see any prejudicial error.

Appellant finally urges that there was no substantial evidence to support the verdict. We do not agree. One of the landowners and two expert witnesses testified for appellees to damages of $40,000, $32,750, and $33,000 to appellees; appellant's two experts testified to damages of $6,850 and $7,000. The qualifications of all the witnesses were admitted, and the jury had the advantage of detailed examination and cross-examination of each witness before reaching its verdict.

Affirmed.

HARRIS, C. J., BROWN and JONES, JJ., dissent.