LEON FLAKE ET AL *v.* THOMPSON, INC.

5-5441                                    460 S. W. 2d 789

Opinion delivered December 21, 1970

*Byron R. Bogard* and *Bruce T. Bullion,* for appellants.

*Moses, McClellan, Arnold, Owen & McDermott,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellants seek reversal of a decree by which the chancery court held that appellants had no right in a purported public easement in the City of Little Rock because:

1.  It was not effective because it was never accepted by city ordinance.

2.  It was not used continuously by the public for a period of time sufficient to establish an easement by prescription.

3.  It was abandoned by city ordinance adopted September 1, 1969.

4.  It did not convey or establish any right in the owners of property adjacent thereto on the north

side thereof, and any use thereof by the owners of this property was by permission of appellees and their predecessors in title.

The decree was rendered in cases which were consolidated for trial since they involved the same purported easement.

The original action was brought in June 1968 by appellants Leon Flake, Dickson Flake and their respective wives as owners of a lot which abutted, in part, upon the purported easement. In this action they sought removal of barriers placed by Thompson, Inc. along the southern boundary of appellants' property and the northern boundary of the purported easement, claiming the right of ingress and egress to and from their property thereby. Thompson denied the existence of the easement. After the filing of this suit, it was discovered that the actual owner of a part of the land included within the boundaries of the purported easement had not joined in the grant upon which appellants relied. Thereupon on April 22, 1969, the City of Little Rock filed a cause of action against appellee and Westgate Corporation, the grantor of the easement, Town and Country, Inc. (T & C), and Heights Development Co., the corporation holding title to that part of the easement area not owned by Westgate, to reform the instrument by adding Heights as a granting party. The city also prayed that appellee be required to remove the barriers. Westgate, T & C and Heights answered, admitting that Heights should be added as a grantor. Little Rock University intervened in the action, as the owner of property (Lot 4) lying north of the easement and at the extreme west end thereof, seeking to enforce the easement.

Individual citizens and residents also intervened. A tract (Lot 5) owned by the Church of the Seventh Day Adventist lay north of the easement and east of the Little Rock University property. It fronted on University Avenue. Appellants' lot was carved out of the southeast corner of the church lot. These intervenors also asked reformation of the easement and removal of the

barriers (which also ran along the south line of the remaining portion of the church lot).

After all these suits and the pleadings therein had been filed, Thompson, Inc., the present owner of Lot 6, the property from which the easement had been conveyed, offered the city a new public easement over the identical course of the earlier purported easement except that the north boundary of the new easement was one foot south of the south line of the church lot and the Flake lot. This easement was accepted by the city by ordinance on September 2, 1969, which also declared its abandonment of the earlier purported easement. The city had dismissed its complaint on May 13, 1969. The Flakes and the church filed suit against the city asking that the ordinance of September 2, 1969, be declared unconstitutional, illegal and void, insofar as it attempted to vacate and abandon the earlier easement.

The three causes were consolidated pursuant to stipulation. The issues, evidence, decree and this opinion will be better understood by reference to the sketch appended to this opinion.

The court's decree found that it was the intention of Westgate, the city and Heights that the latter be joined in the conveyance of the easement and that it was the intention of Westgate, Heights and T & C, their owners, officers and directors, to establish a valid easement, but that this intention was thwarted by mutual mistake.

The following facts are undisputed:

In 1962, Town and Country, Westgate Corporation and Heights Development Company were all owned by the same individuals, and had the same persons serving as their respective officers and directors. They were engaged in development of Lots 4 and 6. Title to Lot 4 was in T & C, which prepared to construct an apartment complex thereon. A building permit by the city was denied because there was no public easement for ingress or egress. The only means of reaching the lot from the

city streets required passage southerly from 29th Street over a private easement granted by owners of property lying north of Lot 4. Westgate then executed a written instrument on July 2, 1962, granting a 30-foot easement leading across Lot 6 from the east line of Lot 4 to University Avenue. This instrument was filed for record on August 15, 1962. The granting clause read:

> THAT WESTGATE CORPORATION, for and in consideration of the benefits accruing to the public, and to guarantee access by public roadway to Lot 4, Riggs Addition to the City of Little Rock, does hereby grant a public street easement to the City of Little Rock so long as such easement is used for the purposes of a public street, over the strip of land in Little Rock, Pulaski County, Arkansas, as set out on the attached plat and described as follows, * * *

At that time Heights, not Westgate, was the owner of that part of Lot 6 which constituted the leg of the easement which connected directly with University Avenue. This leg was 30 feet wide and 130 feet long. The city, however, without investigating the title of the grantors issued its building permit to T & C, upon the recording of the easement. The apartment complex was completed. The purpose of the easement was to satisfy the requirements of the Little Rock ordinances that a building permit be issued only for lots abutting upon a public street. Subsequently, the capital stock of T & C was transferred to Little Rock University. There was still no public easement for ingress and egress to and from these apartments, prior to the grant of the new easement by Thompson, unless it was by the disputed easement.

Heights and Westgate conveyed Lot 6, upon which the Town and Country Shopping Center had been developed, to Thompson by warranty deed on April 14, 1966. Shortly thereafter these two corporations were dissolved, and they appeared by their former directors, as trustees.

The ordinance of the city abandoning the prior easement and accepting the new easement from Thompson contains the following language:

An ordinance vacating and abandoning a certain roadway situated in Lot 6, Riggs Addition to the City of Little Rock; accepting dedication of a substituted easement; and for other purposes.

WHEREAS, the Board of Directors of the City of Little Rock, Arkansas, has determined that the public street easement described in Section 1 hereof, dedicated to the City by the Westgate Corporation has never been used or devoted nor is it necessary for public street or roadway purposes and desires to vacate and abandon all its right, title and interest together with that of the public generally in and to said easement pursuant to the power granted cities of the first class by Arkansas Stat. 19-2304; and,

WHEREAS, the City is desirous of accepting a dedication from Thompson, Inc. for a public street easement of a strip of land in Lot 6, Riggs Addition to the City of Little Rock, Arkansas.

NOW THEREFORE, BE IT ORDAINED BY THE BOARD OF DIRECTORS OF THE CITY OF LITTLE ROCK.

SECTION 1. City of Little Rock hereby vacates and abandons all its right, title and interest together with that of the public generally in and to the following described property dedicated to the City of Little Rock, Arkansas, as a public street easement by Westgate Corporation, to-wit:

\* \* \*

SECTION 2. City of Little Rock, Arkansas hereby accepts from Thompson, Inc. the dedication of a roadway easement in Lot 6 Riggs Addition to the City of Little Rock, Arkansas, more particularly described as follows: \* \* \*

We find the chancery court's decree erroneous, principally because the chancellor applied an incorrect test in holding that the easement never became effective. This matter was treated extensively in *Brewer* v. *Pine Bluff*, 80 Ark. 489, 97 S. W. 1034. Although the irrevocable dedication of the way in question there arose through the sale of lots with reference to a plat recorded by the vendor, we cannot perceive any significant difference between this implied dedication and an express dedication by recorded grant, insofar as the issues here are concerned. (See *City of Stuttgart* v. *John*, 85 Ark. 520, 109 S. W. 541.) The rules of law governing acceptance applied in *Brewer* have equal application here. The language of that opinion is so appropriate to the issues here that we quote from it at some length. We said:

> This dedication was also in a certain sense accepted by the general public, which, with the exception of a few years when it was fenced, entered upon and used this strip as a public way, so far as its nature permitted. Owners of adjoining land formed their fences to the line of this street, and some of them planted shade trees thereon. When the owner of land lays it out into lots and streets, and records a plat thereof, it is not necessary, in order to show an acceptance by the public, to prove a continuous use for a time sufficient to constitute a way by prescription. Although the nature of this street, cut in two by a lake or drain almost impassable to any except persons afoot, prevented it from being extensively used, yet we think the use was sufficient, continued as it was for ten or fifteen years, to constitute an acceptance of the dedication on the part of the public, which, when taken in connection with the sale of lots by the owner, shows clearly that this dedication could not be revoked by the owner, and that this strip of land is now a public way which the defendant has no right to obstruct. *Attorney General* v. *Abbott*, 154 Mass. 323, 13 L. R. A. 251; 13 Cyc. 465.

> But for our statute on the subject the act of the city in doing work on this street, preventing the

deposit of refuse thereon, and the passing of a resolution by the city council ordering the defendant to take down the fence across it, would be sufficient to constitute an acceptance of the dedication by the city. But the statute, after providing that all public highways, streets and alleys within a city shall be under the control of the city council, provides that no street dedicated to public use by the proprietor of ground in a city "shall be deemed a public street or * * * be under the care or control of the city council unless the dedication shall be accepted and confirmed by an ordinance specially passed for that purpose." Kirby's Digest, § 5531.

*   *   *

In *Waring* v. *Little Rock,* 62 Ark. 408, it was said that this act did not apply to streets established by prescription. Now, this street was dedicated after the passage of the act in question, and it has never been accepted by the city in the statutory way. Though the evidence shows that the city has occasionally exercised some supervision and control over this strip, and that the public has used it also, yet there is some room for doubt whether such supervision and control has been sufficient to make it a way by prescription, so that it would be considered a city street and under the control of the city without the statutory acceptance. But that question is not important in this case, for, as before stated, the dedication of it as a public way has now become irrevocable, and the city can accept it at any time. Meanwhile the public has the right to use it, and the plaintiff has no right to obstruct it.

If we concede that, technically speaking, the city, not having accepted it in the statutory manner, has no right to control it as a city street, yet, as it is a way in which the public have rights, and of which the plaintiff has wrongfully taken possession, equity will not uphold him in that wrong by the writ of injunction.

In *Brewer,* the suit was to enjoin the city from removing a fence erected by the grantee in a deed conveying a part of the street involved. All deeds in Brewer's chain of title included this portion of the street. A fence had been erected across this street by the immediate grantee of the dedicator. It remained in place for 3 or 4 years, after which, the way was used for about 13 years by pedestrians and occasionally by equestrians. A lake or drain prevented use by wheeled vehicles except for transportation of fuel and other household necessities to the few people who lived on or near the strip of land.

It is quite clear from *Brewer* and *Bushmiaer v. City of Little Rock,* 231 Ark. 848, 333 S. W. 2d 236, that, insofar as public rights in a street are concerned, acceptance may be by public use as well as by city ordinance. It is equally clear that the use which constitutes an acceptance of a dedication does not have to be for the period necessary to establish a way by prescription.

We now direct our attention to the evidence as to use of the easement in order to determine whether there has been an acceptance of the easement granted by public use. Frank Lyon, the president of both Westgate and Heights (and most likely of T & C) at the time of the grant, testified that a break 20 feet wide was made by the church officers in a curb built along the north side of the easement and the south line of the church lot immediately after the grant of the easement. Although he and his associates had objections to this being done, no effort was made to prevent it because they knew that the church had the right to do this. The break was used, according to him, to afford those going to and from the church property a means of ingress and egress via the easement. He recalled that the church had rejected an offer by him and his associates of an easement along the north side of the T & C apartments in lieu of this means of ingress and egress. It was stipulated that the testimony of two of the other officers and directors of the three corporations would be substantially the same as that of Lyon.

Mary Margaret Richey had been a member of the

church board since 1958 and had served as clerk. She related that the church bought the property in 1954 and that the first services were held there on October 5, 1956. At that time, there was no median or divider on Hayes Street (now University), so that there was no difficulty in entering the church property from either the north or south. According to her, when the traffic divider was to be placed on University, the church officials endeavored to have it broken in front of the church property, so those coming to the church property from the south could have easy entry thereto. She said that this effort failed when it was shown how much more important it was to have the median break at the shopping center. Mrs. Richey testified that she had traveled the route of the easement four times a day, seven days a week, from about 1960 until about May 1968 when a barrier of posts stopped her. She was attending church services and taking her children to and from a school conducted on the church property. She described the route as well defined and stated that yellow lines subsequently marked the course of the easement south of the Esso station. Her use of the route preceded the building of the apartments, and she said that the curb later installed was promptly broken for access to the church lot. According to her there were 50 to 75 people using this route as frequently as she did.

Orlean Thompson also testified that she had used the route daily except for Sunday for about 10 years from the time her children started to school until the entry was barred by posts. Mrs. Edith Bowers, a nurse whose daughter attended the school, testified that she had followed the general route of the easement twice a day for 13 years, although she admitted that she did not always follow the "dog-leg" route but sometimes drove "catercornered" across the lot directly to the entry to the church property. Mrs. Winona Finley testified that she had used the easement one to three times per week from 1962 until 1968, and saw others using it. She admitted that she, too, sometimes followed the more direct "catercornered" route, but said that she always used the part of the easement south of the Esso station to approach University when leaving the church property.

Grainger Williams, a member of the board of trustees of Little Rock University, testified that he started using the easement in 1965 about the time that T & C was given to the University, at which time the existence of the easement was mentioned. He had occasion to use the route in going from his residence to the shopping center where he patronized a drug store among other businesses and in transporting foreign students between the University and the apartments. He stated that he used this route to establish use and prevent a lapse of the easement. While he did not use the leg which connected with University for exit, he always used it when entering from University, realizing its value. He had, on occasion, used the curved drive across the parking lot, but said that he followed the route of the easement more frequently.

Others testified about their use of the route of the easement for shorter periods of time—many after they were urged to do so by Flake, church officials or university representatives as late as 1967 or even 1968.

This testimony as to use is not substantially controverted except by evidence as to parking of vehicles in lanes marked on the easement area and testimony of Mr. Jack Farris, a real estate broker who managed the shopping center for Thompson. Farris stated that he was about the shopping center once or twice a week after he became manager. He never saw anyone driving an automobile along the "dog-leg" route of the purported easement. Mr. Farris admitted that no effort was made to prevent ingress to and egress from the church lot through the break in the curb via the easement area until he put up a barrier of four-inch steel posts the day after the curb was cut by the Flakes or their tenants in 1968.

While it is clear that vehicular parking areas marked off in the north 17 feet of the easement east of the church lot curb cut were often utilized, the date when these areas were marked is not definitely established. Even if this were said to be inconsistent with public use of the easement, there is a preponderance of evidence

showing that there remained sufficient room for passage of a vehicle in the easement south of these vehicles. This parking use was not a sufficient interruption of the public use as a means of travel to overcome acceptance of the public street easement granted. No one would urge that parking vehicles on the side of a public street so as to leave room for passage of traffic would constitute interruption of the public use. We find that evidence indicating a public acceptance of the easement by use preponderates.

We find no merit in appellee's argument that the original grant was never intended as a public easement. The city's requirement that there be a public access and the plain words of the grant itself belie this argument. It is obvious that if there has been acceptance by use, there could not possibly have been any abandonment by non-use or obstruction of the way, even if either could have otherwise barred the rights of the public, because neither could have continued for the requisite seven-year period. *Fullenwider* v. *Kitchens*, 223 Ark. 442, 266 S. W. 2d 281, 46 A. L. R. 2d 1135; *Clinton Chamber of Commerce* v. *Jacobs*, 212 Ark. 776, 207 S. W. 2d 616. Intermittent use of the alternate curving route across the shopping center parking lot would not constitute an abandonment of the easement granted, because there is not sufficient evidence to indicate the requisite intention to abandon or that obstructions to the granted easement necessitated its use. See *Arkansas State Highway Comm.* v. *Hampton*, 244 Ark. 49, 423 S. W. 2d 567; 25 Am. Jur. 510, Easements and Licenses § 105; *Fulcher* v. *Dierks Lumber & Coal Co.*, 164 Ark. 261, 261 S. W. 645.

Inasmuch as the easement granted and accepted was a public street, the abutting property owners acquired certain rights therein. The owner of property abutting upon a street has an easement in such street for the purpose of ingress and egress which attaches to his property and in which he has a right of property as fully as in the lot itself. *Campbell* v. *Arkansas State Highway Commission*, 183 Ark. 780, 38 S. W. 2d 753; *Arkansas State Highway Commission* v. *McNeill*, 238

Ark. 244, 381 S. W. 2d 425; *Lincoln v. McGehee Hotel,* 181 Ark. 1117, 29 S. W. 2d 668.

There is no room for doubting that appellants acquired their lot in reliance upon this property right. The representative of the church selling the property showed the instrument constituting the grant to which there was then attached a plat depicting the easement area to appellant Dickson Flake. This appellant testified that he also inspected the area before entering into a purchase contract in February 1967, observing that the curb was not materially different from those generally placed along city streets and that it had been broken north of the lot appellants were buying to provide a means of access to the church school grounds. Flake found the lines of the easement obvious to an observer and noticed no obstruction. He saw some faded lines painted in the north portion of the easement which he described as being about 17 feet long and found a line following the course of the easement about 5 feet south of it. He also testified that the easement had a significant bearing on the ultimate purchase because it provided the only means of exit from the lot by which one in an automobile could leave the lot and proceed north on University Avenue. According to him, the plans for improvement of the lot by construction of a Burger King restaurant, submitted to and approved by the city shortly after their purchase, showed a curb cut on that part of the lot bordering the easement. The fact that the Flake lot is 25 feet deeper than the Esso station lot, thus providing exactly 25 feet bordering the easement, is not without significance.

Appellee argues, however, that the city has now vacated and abandoned the public easement by the ordinance passed in September 1969. We find this ordinance ineffective to deprive appellants and their invitees from using the easement for ingress and egress.

It is true that the city authorities do have the right to vacate streets and alleys. Ark. Stat. Ann. § 19-2304 (Repl. 1968); *City of Little Rock v. Linn,* 245 Ark. 260, 432 S. W. 2d 455. It was clearly recognized in that case

and in the authorities there cited, however, that a city ordinance vacating a street would not be valid if it was unreasonable, arbitrary, oppressive, discriminatory or an unwarranted invasion of private rights. The evidence in this case clearly shows that the ordinance constituted an unwarranted invasion of private rights and was discriminatory and oppressive, and thus it is unreasonable and arbitrary. The necessity for a public way in the area was clearly recognized by the city by its acceptance in the selfsame ordinance of an easement that differed from the one vacated only in its moving the easement one foot south along the former church lot only in order to deprive appellants and the present owner of the church lot of ingress and egress via the easement. It is significant that, even though the city dismissed its complaint in May 1969, the vacating ordinance was not passed for four months and then only when the new easement was tendered and accepted.

The property right of ingress and egress of appellants in the easement was one that could not be taken from them by the city, at least without the payment of just compensation. *City of Osceola* v. *Haynie,* 147 Ark. 290, 227 S. W. 407; *Campbell* v. *Arkansas State Highway Commission, supra; Arkansas State Highway Commission* v. *McNeill, supra; Campbell* v. *Ford,* 244 Ark. 1141, 428 S. W. 2d 262; *Little Rock M. R. & T. Railway Co.* v. *Allen,* 41 Ark. 431; *Dickerson* v. *Town of Okolona,* 98 Ark. 206, 135 S. W. 863. The action of the city was not an attempt to exercise the power of eminent domain. While not controlling, it is significant that no provision was made by the city for payment of compensation for the property rights taken or for notice to the property owners of the city action to enable them to have the amount of compensation due them for the taking of their property rights determined, both of which are usually necessary to proper exercise of the right of eminent domain where a specific method for making that determination has not been provided by legislation. *Arkansas State Highway Commission* v. *French,* 246 Ark. 665, 439 S. W. 2d 276; *Greene County* v. *Knight,* 174 Ark. 618, 297 S. W. 861. Obviously, such provisions would have been inconsistent with the state-

ment in the preamble to the ordinance that the easement had not been used, which in itself is a clear indication that the city board had no intention to exercise its power of eminent domain.

Appellee relies upon such cases as *Barbee v. Carpenter*, 223 Ark. 660, 267 S. W. 2d 768; *Risser v. City of Little Rock*, 225 Ark. 318, 281 S. W. 2d 949. *Barbee* has no application because the portion of the street closed was conveyed to the abutting owner, who petitioned for its closing. *Risser*, like *City of Little Rock v. Linn, supra,* does not govern here, because the rights of owners abutting upon the public way being vacated were not involved in those cases. The mere fact that appellants also have a means of ingress and egress via University Avenue does not affect or diminish their property rights in the easement, and they cannot be deprived of these rights because of the remaining means of ingress and egress. *Campbell v. Ford, supra; Langford v. Griffin*, 179 Ark. 574, 17 S. W. 2d 296.

Appellee also argues that the reformation of the easement should not be effective as to it, because it was not a party to the easement and was an innocent purchaser for value. We do not understand how the reformation to include Heights as a grantor has any bearing on that part of the easement admittedly granted by Westgate upon which the Flake property borders. It only affects the leg of the easement connecting with University. If Westgate granted a public easement or street upon which the church property (including that presently owned by appellants) abutted, appellants would still have abutter's rights in that portion of the easement. The intervenors (Ballenger et al) as citizens and taxpayers asked reformation in their pleading in the city's suit to which Thompson was a party. Thompson filed a complaint over against the officers and directors of Westgate and Heights asking that they, as trustees of the dissolved corporation, be required to defend Thompson's title to the easement area against the intervenors after the city dismissed its complaint. This complaint against these directors was dismissed without prejudice before the trial. Appellee is in no position to complain

here about the reformation because it did not appeal from the decree reforming the granting instrument.

Furthermore, Farris testified that he took over the management of the shopping center for Thompson before the actual closing of the purchase from Westgate and Heights. He represented Thompson in closing. Ollis Mallett, now deceased, was the representative of the sellers with whom Farris negotiated and was actually their managing officer. Farris said that he learned of the grant of the easement when it appeared in the record of title of Lot 6. He also said that the title opinion furnished the purchasers mentioned this easement. Farris said that when he questioned Mallett about the easement, "he explained it to me as has been explained to the court." Later he testified that Mallett said that the easement was given to satisfy the city officials, that it had never been used and never would be, that the city would not patrol it or keep it repaired. When all pertinent facts are considered we cannot say that Thompson was without notice of the easement at the time of the conveyance from Westgate and Heights.

Appellants now argue that the intervention of Ballenger et al should be dismissed because it has been stipulated that the church has sold the remainder of the lot and these people, as members of the church, are no longer interested in ingress and egress via the easement. Appellee made a motion to dismiss on this ground before trial. It does not appear that this motion was ruled upon by the court before trial. It was incumbent upon appellee to call its motion to the court's attention and obtain a ruling thereon. Failure to do so would constitute a waiver, so that the motion could not be considered on appeal. *Trinity Universal Insurance Co.* v. *State Farm Mut. A. I. Co.*, 246 Ark. 1021, 441 S. W. 2d 95; *Gaines* v. *State*, 208 Ark. 293, 186 S. W. 2d 154; *Harbottle* v. *Central Coal & Coke Co.*, 134 Ark. 254, 203 S. W. 1044; *Sanders* v. *W. B. Worthen Co.*, 122 Ark. 104, 182 S. W. 549. The cause was heard upon the petition of the intervenors, among other pleadings. In the decree the court denied all motions not theretofore ruled upon. If this included appellee's motion to dismiss

the intervention, we cannot consider the correctness of the ruling because appellee did not appeal.

The decree is reversed and, since real property rights are involved, the cause is remanded for the entry of a decree consistent with this opinion.

BYRD, J., not participating.

The following is a copy of the plat referred to in the foregoing opinion: