138

SHIRLEY BOATWRIGHT *v.* PULASKI COUNTY
JUVENILE COURT

5-5500                                    464 S. W. 2d 600

Opinion delivered March 15, 1971

*Monroe L. Bethea,* for appellant.

*Joe Purcell,* Attorney General; *Milton Lueken,* Asst.
Atty. Gen., for appellee.

LYLE BROWN, Justice. Garry Wayne Morris, a/k/a
Boatwright, was adjudged by the Pulaski County Ju-
venile Court to be a dependent and neglected child.
Custody was removed from the mother (the father was
deceased) and the boy was placed in the custody of Mr.
Jim Fisher, operator of Shawnee Valley Boys Ranch,

Harrison, Arkansas. Three years later, when the mother had regained her health and was steadily working, she petitioned that the boy be returned to her custody. That petition was denied and on appeal to circuit court there was an affirmance. The mother, Shirley Boatwright, appeals, alleging the judgment to be contrary to the law and the evidence; that the court erred by admitting into evidence several notarized statements from employees of the boys school; and that the mother was not bound by any contractual arrangement between herself and the boys school to the effect that the child was to remain at the school until he finished the twelfth grade.

In 1966 Shirley Boatwright was approximately twenty-eight years of age, in poor health, and in dire financial circumstances. Life for her had been rugged. As a teenager she had served a time in the Arkansas Girls Training School. Following that episode she married; in fact she had five different husbands. To one or more of those marriages were born two children, and in 1966 the daughter was ten years of age and Garry was two years older. Shirley made arrangements with her parents to care for the daughter. Because the parents' home was not large enough to accommodate both children, and because Garry presented an unusual disciplinary problem, the mother agreed to a juvenile court order declaring the boy a ward of the court and with the understanding that he would be placed in the Shawnee Valley Boys Ranch.

In 1969 the mother was living in Alabama. She was regularly employed and earning some sixty dollars a week take-home pay. She had a three-bedroom apartment. She took the daughter to Alabama and placed her in school, where the child was reportedly making good grades. In that situation, and with her health regained, the mother petitioned the Pulaski County Juvenile Court to reinvest her with custody of the boy. The court adjudged that the boy remain in the present custody as a ward of the court.

We cannot agree with appellant that the judgment is contrary to the law and the evidence. In *Duncan* v. *Crowder,* 232 Ark. 628, 339 S. W. 2d 310 (1960), we said: "As in all child custody cases, the tender consideration we have for the future of the child involved causes us more concern than we experience in any other type of case. Of course it is a universal rule of law that the paramount consideration in awarding custody of minor children is the best interest and welfare of the child." With that rule of law as a guide we examine the evidence.

We do not dispute the assertion that the mother is not as unstable as she was when she relinquished custody of her son in 1966. But the paramount question is whether the son has shaken off his incorrigibility which just four years ago was so serious that neither the mother nor the boy's maternal grandparents could control him. On cross-examination the grandfather, who was called as a witness by the mother, stated the opinion that the interest of the boy would be better served if he were left at the boys ranch. Jim Fisher is the director of the boys ranch. He said Garry had made considerable improvement but that he is not yet ready to adjust to public school life because of personality traits. Fisher predicted that if the mother's petition for custody were granted, Garry would doubtless end up in a reform school. The trial judge was also probably impressed, as we are, with the fact that the mother has to work full time and therefore would not be able to give maximum attention to the child's problems. Then there was the testimony of Rev. Grover Bishop, pastor of the Fairview Baptist Church in Little Rock. At appellant's request he had helped get the boy admitted to the boys ranch. He had observed Garry "in the most recent months," and it was Rev. Bishop's opinion that Garry is not yet prepared to be released from the boys ranch. The testimony we have recited was not contradicted. The only substantial testimony offered by the mother was as to her belief that she is now able, physically, emotionally, and financially, to care for her son.

Appellant complains that the court considered, in violation of the hearsay rule, five notarized statements from teachers and custodians at the boys ranch. Those statements opposed Garry's release. After a careful search of the record we find no showing that the statements were in fact introduced as evidence. There was considerable discussion concerning those instruments. At one point the court said, "Very well, they appear to qualify." But before the court pursued the matter to a final determination on admissibility counsel for appellant interceded and asked for permission to further question the witness on the point of inadmissibility. That motion was granted. After further questioning of the witness through whom the instruments were sought to be introduced, the court said: "The documents will be *marked for identification* and submitted to the court and I will make my ruling as to the admissibility subsequently. Let them be marked for identification as State's Exhibit Two." (Emphasis ours.)

Other than allowing the instruments to be marked for identification we are unable to find any further reference thereto. At the close of appellant's evidence the respondent moved for judgment. The court responded by saying that he had "not read the reports *that have been admitted."* We conclude that he was referring to the two written instruments which were admitted in evidence on behalf of the appellant. (The admissibility of those instruments is not attacked on appeal.) They consisted of a letter from the State of Alabama, department of pensions and security, and another letter from the department of pensions and security of Mobile County, Alabama.

It is to be noted that the court said a ruling would be subsequently made on the admissibility of the documents. In that situation, if the appellant desired to pursue the motion, she should have subsequently called the court's attention to the motion and sought a ruling. The failure to so act constituted a waiver. *Flake* v. *Thompson,* 249 Ark. 713, 460 S. W. 2d 789.

The next point made by appellant is that "any contractual arrangement between Mrs. Boatwright and Shawnee Valley Boys Ranch that Garry would remain there until he finished high school would be void as against public policy." Mr. Fisher testified that he wrote a letter to the juvenile court stating that Garry would be accepted on condition that he stay at the ranch until he finished high school. Appellant did not pursue her initial objection to the testimony. There is no intimation that the trial court took that statement into consideration in its decision. That condition was not incorporated into the juvenile court decree and properly so, even if appellant had given her consent. *Waldron* v. *Childers*, 104 Ark. 206, 148 S. W. 1030 (1912). For the reasons stated, we find the point to be without merit.

Affirmed.