DAVID M. GLOVER, Judge
Marianne Young appeals from the February 17, 2017 order and decree in favor of Robin and James Bird. Specifically, the trial court reaffirmed a 1986 chancery court decree that Grist Mill Road ("GMR") is a public road and that no individual shall interfere with the right of the public to use the road. Marianne raises two points of appeal: The trial court erred in granting the Birds' motion for a "directed verdict"[1] because 1) there was substantial evidence that the public use of GMR had been abandoned and 2) there was substantial evidence that the Birds had changed the use of GMR from residential to commercial and imposed burdens on it that destroyed the purpose for which it was normally and generally used. We affirm.
Litigation History
In 1986, Elizabeth Richardson filed a case against Marianne Young and her sister, Jeanne Hutchinson, when the sisters put a gate across GMR. The gate blocked Richardson from accessing her property on the road-property she used only occasionally to camp. In the 1986 case, the trial court entered a decree in Richardson's favor, finding in pertinent part that "[t]he court doth find that said road extending from the highway southwesterly to the brow of the mountainside and thence west is a public road and the defendants are permanently enjoined from placing a gate across the road, or in any way interfering with traffic along said road." The order was binding on the parties, their heirs, and assigns.
Trial Testimony
According to Marianne's testimony, between entry of the 1986 decree and 2011 when the Birds purchased their property on GMR, the road was used "exclusively as a residential driveway" to access the properties located along the road. It is undisputed the Birds do not live on their property; instead, they rent the property to others for use as an event venue for weddings, parties, and other similar gatherings. Marianne filed her original complaint against the Birds on July 24, 2015, seeking a cease and desist order for any use of GMR for commercial purposes. She subsequently *225 amended her complaint to also allege nuisance, but the amended complaint was nonsuited on Marianne's motion at trial. It was also specifically abandoned as a claim in her March 13, 2017 notice of appeal.
At the bench trial of this case, Marianne presented extensive evidence. Officer Phillip Rappold testified about a one-time incident in which he had to back down the road because of three oncoming vehicles. He was not able to identify where the vehicles had come from.
Jimmy Hart, the county judge, knew of GMR's existence and where it was located. He had never been down the road and knew nothing of its width, surface, or ditches. He testified that the county does not maintain the road, but further explained that just because a county does not maintain a road does not mean that it is not a public road. He classified GMR as a "public access road."
Marianne testified on her own behalf. Her house is the first one on GMR. She stated that, "since 1993 [which she subsequently changed to 1986], GMR has only been used as a residential driveway." She testified that the first time she had seen the 1986 decree was "just this past year," but she acknowledged her now deceased husband, James K. Young, was also her attorney in the earlier lawsuit. Marianne stated that the mailboxes for houses located on GMR are all located on Highway 154, and no school buses travel on GMR. She said since the Birds purchased the property from the Slaughter family, use of the road had changed, with more traffic and more people who did not know about the road and its pull-offs. She did not know how frequently there was extra traffic on the road because she "does not get out and about that much," but that "it almost seems like every time [she does, she] meets somebody" on the road. She did not know how to average those occurrences and testified she usually left home only about twice a week. She said the Birds' business had "caused a greater use on the road than when the Slaughters had the property." She said she has had to back up to avoid being run off the road, and she was told an emergency vehicle trying to reach her house when she broke her leg had trouble getting to her, but she did not know that of her own personal knowledge. She did not know how many people usually attend the weddings or other events on the Birds' property, and she did not know how many times the Birds had rented the property since December 2011.
Appellee Robin Bird testified as part of Marianne's case-in-chief. She stated she did "not have any idea how much extra traffic" the events held on her property caused on the road or if having the events changed the use of GMR. She explained there are six pull-offs on the road, and in some areas it is wide enough to pass vehicles.
Don Higgins, Marianne's son and a resident along GMR, testified that since the Birds' business began, "the amount of traffic has increased manifold" with wedding attendees, vacationers, cleaning crews, suppliers, and service providers. He said the attendees come and go multiple times, and a lot of trucks pull trailers down the road. He testified the ditches have been filled in, causing drainage problems; the traffic continues until the wee hours of the morning; and he had called the police three or four times because of noise and a vehicular incident.
Kimberly Darling testified that since the Birds bought the property, the difference in the traffic is significant. She said it has created a sense of a lack of security, and she has had trouble with encountering guests and customers on the road. She stated normal residential traffic up and *226 down the lane might be half a dozen vehicles a day, but now there may be days when there are thirty, forty, or fifty vehicles traveling up and down the road. She acknowledged that level of traffic does not occur every day and that it could be for weekend events. She acknowledged that the majority of the events had probably on the weekends but that there were also times when there was weekday traffic.
At the close of Marianne's case, the Birds moved for a "directed verdict," which was granted by the trial court. The resulting decree was entered on February 17, 2017.
Standard of Review
Because this was a bench trial, the motion made should technically have been to dismiss, rather than for a directed verdict. However, both motions fall under Arkansas Rule of Civil Procedure 50(a) and are very similar in nature. In evaluating the nonmoving party's case, the trial court does not exercise fact-finding powers that involve determining questions of credibility or of the preponderance of the evidence. Swink v. Giffin , 333 Ark. 400, 970 S.W.2d 207 (1998) (quoting George Rose Smith in Brock v. Bates , 227 Ark. 173, 297 S.W.2d 938 (1957) ). To determine whether the plaintiff has presented a prima facie case, the trial court must view the evidence in the light most favorable to the nonmoving party and give the evidence its highest probative value, taking into account all reasonable inferences deducible from the evidence. First United Bank v. Phase II , 347 Ark. 879, 69 S.W.3d 33 (2002). If the evidence, viewed in the light most favorable to the nonmoving party, is not substantial, the trial court should grant the defendant's motion for directed verdict [motion to dismiss]. Id. Evidence is insubstantial when it is not of sufficient force or character to compel a conclusion one way or the other or if it does not force a conclusion to pass beyond suspicion or conjecture. Id.
Discussion
For her first point of appeal, Marianne contends the trial court erred in granting the Birds' motion because there was substantial evidence to demonstrate that the public use of GMR had been abandoned. We disagree.
Marianne has had a long history with this area. Her parents bought the property she now owns in 1946. For our purposes, however, the starting point is the 1986 decree, which found GMR is a public road. No appeal was taken from the 1986 decree. Marianne contends the testimony presented in the present case establishes that since entry of the 1986 decree, GMR has been abandoned as a public road because it "has been used only as a residential driveway for families, visitors, utilities, delivery services, and maintenance services." She further relies on her testimony that the mailboxes are all located on Highway 154 and that no school buses use GMR. She claims that until the Birds' purchase in 2011, GMR "has not been used by the public to access anything." She and other residents along the road testified that until 2011, the use of GMR was exclusive to the residents of the road, although they recognized that UPS, FedEx, utility, maintenance, and other service vehicles used the road to access various residences located along it.
Marianne further contends that the testimony and evidence presented in her case demonstrated the intent to abandon public use, either "by presumption or implied intent." In support of this contention, she noted testimony and photos presented through her son, Don Higgins, showing a "sign right at the start of Grist Mill Road that says, 'Private drive no outlet.' " She *227 argues that placement of the sign was an act inconsistent with the future right to use GMR as a public road; however, no time frame was assigned to the sign's installation. She concludes her first point by arguing that the evidence was of sufficient force and character either to compel the conclusion that the public use of the road had been abandoned for seven years or to raise a factual question on that issue. We are not convinced.
Here, the trial court based its decision primarily on the 1986 decree, which found GMR was a public road. The public's right to use a road that has been acquired by prescription can be abandoned by nonuse, accompanied by an express or implied intention to abandon, or by acquiescence to, or tolerance of, the obstruction of passage. See Wallace v. Toliver , 265 Ark. 816, 580 S.W.2d 939 (1979) ; Arkansas State Hwy. Comm'n v. Hampton , 244 Ark. 49, 423 S.W.2d 567 (1968) ; Mount v. Dillon , 200 Ark. 153, 138 S.W.2d 59 (1940).
Marianne presented her evidence in an effort to establish that the public had abandoned its use of GMR after the 1986 decree was entered and before the Birds purchased their property in 2011. However, she did not present substantial evidence to show that the public's use of the road between 1986 and 2011 was significantly different from its use preceding the 1986 decision. Moreover, the photograph of the sign stating the road was private and had no outlet proved nothing because no one ever established a time frame for it, and it did not obstruct use of the road in any fashion. For the testimony concerning lack of use by postal trucks and school buses to prove anything, Marianne needed to establish that those types of vehicles had used the road before 1986. She did not. Further, there was abundant testimony that UPS, FedEx, maintenance vehicles, visitors, and utility trucks continue to use GMR to access the residences located along it. The county judge essentially testified the county does not maintain the road, but further explained that just because a county does not maintain a road does not mean that it is not a public road. In fact, at one point in his testimony, he classified GMR as a "public access road." In short, viewing the evidence in the light most favorable to Marianne and giving the evidence its highest probative value, taking into account all reasonable inferences deducible from the evidence, we cannot conclude it was sufficient to present a prima facie case that GMR's public use had been abandoned.
For her remaining point of appeal, Marianne contends there was substantial evidence that the Birds changed the use of GMR from residential to commercial and imposed burdens on the road that destroyed the purpose for which it was normally and generally used. We disagree.
As with Marianne's first point, we begin with the 1986 decree in which GMR was found to be a public road. In Westlake v. Duncan, Dieckman & Duncan Mining Co. , 228 Ark. 336, 307 S.W.2d 220 (1957), our supreme court acknowledged the reason and logic of recognizing there should be a limit to the burden that can be placed even on a public highway. The court considered the issue of whether a public roadway that had been established by prescription, and over which pedestrians, wagons, and automobiles had passed for several years, had undergone such a change of use with heavy trucks hauling manganese ore over it as to constitute the level of extra burden that would allow prohibition of the trucks. The supreme court conceded for the purpose of its opinion that the appellee's usage of the road amounted to an increased burden, but, as acknowledged by Marianne, the court concluded it was not enough of an increased burden to justify *228 the landowner closing the roadway. In discussing the issue, the court explained in part:
Once highways have been acquired by prescription for public use, they should be open for all uses reasonably foreseeable. This thought is expressed by Elliott on Roads and Streets, 4th Edition, Vol. 1, page 14, where it is stated that roads generally used by the citizens of a locality, but open to the general public, are public roads, although they may afford facilities for travel to only such persons as reside in the neighborhood and may not be useful to the general public. It is, however, essential that such a road should be one open to the public, and free and common to all citizens.
Id. at 338-39, 307 S.W.2d at 222.
Here, viewing Marianne's change-of-use evidence in the light most favorable to Marianne as the nonmoving party, we find it is not of sufficient force or character to constitute substantial evidence and thereby survive the Birds' challenge. As in Westlake , even if we were to concede for purposes of this opinion that the Birds' use of GMR increased the burden, the evidence would not be sufficient to present a prima facie case that the increased burden destroyed the purpose for which the public road was normally and generally used.
Affirmed.
Gruber, C.J., and Harrison, J., agree.

The Birds should have moved to dismiss, rather than move for directed verdict, because the case was being tried by the court and not a jury. See Rymor Builders, Inc. v. Tanglewood Plumbing Co., Inc. , 100 Ark. App. 141, 265 S.W.3d 151 (2007).